IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LAURETTA D. CONDE,            :
                             :
    Plaintiff,            :
                             :
v.                           :      Civil Action No.
                             :      1:17-CV-00078-TWT-JCF
TRUCK DRIVERS AND HELPERS    :
LOCAL UNION NO. 728,[1]       :
                             :
    Defendant.            :

## ORDER and NON-FINAL REPORT AND RECOMMENDATION

This case is before the Court on Plaintiff's motion for an extension of time

and to appoint counsel (Doc. 14), Defendant's Motion To Dismiss Amended

Complaint (Doc. 19), Defendant's Motion To Strike Plaintiff's Second Amended

Complaint (Doc. 23) and Corrected Motion To Strike Plaintiff's Second Amended

Complaint (Doc. 24), Plaintiff's motion to serve "Atty J. Fagan" (Doc. 27),

Plaintiff's Motion For Leave To File Second Amended Complaint (Doc. 28),

Defendant's Motion To Strike Plaintiff's Response Brief To Defendant's Motion

To Dismiss Plaintiff's Second Amended Complaint (Doc. 31), Plaintiff's Request

---

[1] Plaintiff has referred to Defendant as "International Brotherhood of Teamsters
Local Union 728" (*see* Doc. 7 at 1), "Teamsters Local Union 728" (*see* Doc. 11 at
1), and as "Truck Drivers & Helper Local 728" (*see* Doc. 20 at 1).  Defendant's
correct name is "Truck Drivers and Helpers Local Union No. 728."  (*See* Doc. 3 at
1).

For Review Of Court Order (Doc. 33), and Plaintiff's Motion For Leave To File Third Amended Complaint (Doc. 35).

## Factual and Procedural History

Plaintiff, who is proceeding *pro se*, alleges that she is a member of Defendant Union, which maintains a referral list from which production companies hire members.  (*See* Doc. 7 at 8).   On January 5, 2017, Plaintiff filed an Application To Proceed In District Court Without Prepaying Fees Or Costs.  (Doc. 1).  She attached to her application a form employment discrimination complaint in which she alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*   ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq*. ("ADEA"), and the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*.  ("ADA").  (Doc. 1-1). According to Plaintiff, Defendant changed the seniority referral list system in 2014 by adding a "5% clause" to the bargaining agreement, which allows Defendant to withhold five percent of the referee names (i.e., names based on seniority) from being hired by production companies.  (*Id.* at 8-9).   Plaintiff alleges that the adoption of that rule has allowed "Local Union 728, Captains and Producers/Coordinator/Company the right to discriminate, without repercussion." (*Id.* at 9).   She asserts that the "5% rule allowed 'nepotism' to take a seat at the head table allowing those they find unfavorable to be skipped over repeatedly

without restraint." (*Id.*).  She further alleges that she "made a grievance and plea to the Local 728 regarding discrimination, retaliation and bull[y]ing while working on" various productions, but a Business Agent told her "they don't have to hire [Plaintiff] because of the 5% rule," and the Union found no merit to her grievance. (*Id.*).  Plaintiff also filed a charge with the National Labor Relations Board ("NLRB"), which was dismissed, and she filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter. (*Id.* at 9-10).  Plaintiff alleges that "[a]fter filing these charges I have been blackballed, being given very little in 2015 and little to no work in 2016." (*Id.*).

Defendant filed a motion to dismiss on February 23, 2017 (Doc. 3), to which Plaintiff did not timely respond.  On March 24, 2017, the undersigned granted Plaintiff's application to proceed *in forma pauperis* and recommended that most of Plaintiff's claims be dismissed.  (Doc. 8).  Specifically, the undersigned recommended that: (1) Plaintiff's ADA disability discrimination claim be dismissed because Plaintiff failed to include that claim in her EEOC charge and therefore failed to administratively exhaust it; (2) Plaintiff's ADA retaliation claim be dismissed because Plaintiff did not allege that she had engaged in statutorily protected activity under the ADA by complaining about disability discrimination; (3) Plaintiff's Title VII and ADEA discrimination claims be dismissed because

3

Plaintiff alleged that she received her EEOC notice of right to sue letter from the EEOC on October 6, 2016, but she did not file those claims until January 5, 2017, more than 90 days after receiving her right to sue letter.  (*See id*. at 5-11).  The undersigned also recommended that Defendant's motion to dismiss Plaintiff's Title VII and ADEA retaliation claims be denied and that Plaintiff be required to file an amended complaint in which she:

> properly names Defendant; describes the specific actions Defendant took against her after she filed her September 28, 2015 EEOC charge and when those actions were taken; identifies the person or persons who took those actions; provides factual support for her belief that those persons were aware of her EEOC charge; provides factual support for her belief that those persons took the challenged action because she filed an EEOC charge; and attaches a copy of her 2016 EEOC charge alleging that Defendant retaliated against her.

(*Id.* at 19-20).

On the same day the Court entered the undersigned's Report and Recommendation, Plaintiff filed a motion for extension of time and to appoint counsel (Doc. 14), a belated response to Defendant's motion to dismiss (Doc. 15) and another complaint, construed as an Amended Complaint (Doc. 11).  On April 7, 2017, Defendant moved to dismiss the Amended Complaint (Doc. 19).  On the same day, Plaintiff filed another Amended Complaint (Doc. 20) ("Second Amended Complaint") which she asserts she filed in response to the undersigned's Report and Recommendation (*see* Doc. 22 at 2).

Plaintiff did not file objections to the undersigned's March 24, 2017 Report and Recommendation, and on April 17, 2017, the District Judge adopted it (Doc. 21), thus dismissing Plaintiff's ADA discrimination and retaliation claims and her Title VII and ADEA discrimination claims.  Defendant moved to strike Plaintiff's Second Amended Complaint on the ground that Plaintiff had not sought leave to file it and contends that leave should not be given because she continued to fail to state a claim for retaliation.  (Docs. 23, 24).  Plaintiff then moved for leave to file a "Second" Amended Complaint (Doc. 28), which Defendant opposes (Doc. 29).  On July 21, 2017, Plaintiff moved to file a "Third" Amended Complaint (Doc. 35), which Defendant opposes (Doc. 36).  In the meantime, on June 27, 2017 Plaintiff filed a request for review of the Court's April 17, 2017 Order.  (Doc. 33).

With briefing on all pending motions complete, the undersigned turns to their merits.

## Discussion

## I.  Plaintiff's Motion For Extension Of Time And To Appoint Counsel (Doc. 14)

Plaintiff filed a "Plea For Additional Time, Point of Counsel And Rebuttal Of Defendant Claim" (Doc. 14), in which she appears to respond to some of the arguments Defendant made in its motion to dismiss Plaintiff's original complaint. To the extent that she requested additional time to file a response to Defendant's motion, that request is **DENIED as moot** as the undersigned had already issued a

Report and Recommendation on Defendant's motion by the time Plaintiff submitted her request.

Turning to Plaintiff's motion for appointment of counsel, a court has discretionary authority to appoint counsel for litigants who cannot afford counsel in civil cases. *See* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel"); *see also Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999) ("A plaintiff in a civil case has no constitutional right to counsel. A court may, however, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff."). The appointment of counsel in such cases "is a privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990). In addition, Title VII provides that a court may appoint counsel "in such circumstances as the court may deem just[.]" 42 U.S.C. § 2000e-5(f)(1). In determining whether the court should appoint counsel, a court should consider such factors as (1) the plaintiff's ability to afford counsel; (2) the plaintiff's diligence in searching for counsel; (3) the merits of the plaintiff's case; and (4) the plaintiff's ability to prepare and present his case without the aid of counsel. *See Donohoe v. Food Lion Stores, Inc.*, 253 F. Supp. 2d 1319, 1321 (N.D. Ga. 2003) *Donohoe*, 253 F. Supp. 2d at 1321. "In determining the litigant's ability to present

his or her case without the aid of counsel, the court should look to the complexity of the legal issues and the plaintiff's ability to gather and present crucial facts." *Id.* at 1323 (internal quotation omitted).

Plaintiff has not pointed to exceptional circumstances which would justify the appointment of counsel in this case. Her allegations and claims do not appear to be "so novel and complex as to require the assistance of a trained practitioner." *Fowler*, 899 F.2d at 1096. Nor has she shown that she lacks the "ability to gather and present crucial facts" about her case, as shown by the multiple motions she had filed. *See Donohoe*, 253 F. Supp. 2d at 1323 (denying motion to appoint counsel because "[t]he presentation of evidence and arguments on [the plaintiff's claim] are not so complex that Plaintiff cannot handle them on his own . . . . To this point, Plaintiff is adequately representing himself in this case, and the Court sees no reason why Plaintiff cannot continue to adequately represent himself").

Accordingly, Plaintiff's motion for an extension of time and to appoint counsel (Doc. 14) is **DENIED**.

## II.   <u>Plaintiff's Motion For Service (Doc. 27)</u>

Plaintiff requested the Clerk to "serve defendant: ATTY J. FAGAN" by U.S. Marshal. (Doc. 27). Plaintiff did not explain what process she seeks to have served on Defendant's attorney, or a basis for such service. It is Plaintiff's

responsibility to serve Defendant's counsel with a copy of her filings. Accordingly, Plaintiff's motion for service (Doc. 27) is **DENIED**.

## III.   Defendant's Motion To Strike Response Brief (Doc. 31)

Defendant moves to strike Plaintiff's "Response Brief To Defendants' Motion To Dismiss Second Amended Complaint" (Doc. 30) on the grounds it constitutes an improper surreply brief related to Defendant's motion to dismiss Plaintiff's Amended Complaint (*see* Doc. 19).   (Doc. 31-1 at 1-2).   Although Plaintiff referred to her filing as a response to Defendants' motion to dismiss Second Amended Complaint, it actually appears to be a reply brief in response to Defendant's response in opposition to her motion for leave to file a "Second" (but actually Third) Amended Complaint (*see* Docs. 28, 29).   Accordingly, Defendant's motion to strike (Doc. 31) is **DENIED**, and the Court has considered that filing in connection with Plaintiff's motion for leave to amend, discussed below.

## IV.   Plaintiff's Motion For Review Of Order (Doc. 33)

Plaintiff moves the Court, pursuant to FED. R. CIV. P. 60, to review the April 17, 2017 Order adopting the undersigned's Report and Recommendation and granting in part and denying in part Defendant's motion to dismiss Plaintiff's Complaint (*see* Doc. 21).   (Doc. 33).   Plaintiff devotes most of her motion to clarifying that her complaint filed March 24, 2017 (Doc. 11) was not intended to be her amended complaint in response to the undersigned's recommendation that

she be directed to file an amended complaint, but instead she intended it as a response to Defendant's motion to dismiss her original complaint. (Doc. 33 at 1-2). Instead, she asserts that her Amended Complaint filed on April 7, 2017 (Doc. 20) was intended to reply to the Report and Recommendation. (*Id.* at 3). Therefore, Plaintiff asks that the Court consider her Doc. 7 and 11 filings "not as[] Complaints but in response to the Defendant." (*Id.*). As discussed below, the undersigned has treated Plaintiff's Second Amended Complaint (Doc. 20), not her March 24th complaint (Doc. 11), as the amended complaint Plaintiff was directed to file.

Plaintiff has not shown, however, any basis for the Court's review or reconsideration of the April 17, 2017 Order, pursuant to Rule 60 or otherwise. Plaintiff simply "requests that this Honorable Court reviews the Order giving the Plaintiff an opportunity to overcome a setback." (Doc. 33 at 3). Plaintiff has not made any showing that the Court's Order granting Defendant's motion to dismiss her ADA discrimination and retaliation claims and her Title VII and ADEA discrimination claims (*see* Docs. 8, 21) contained a mistake requiring correction pursuant to Rule 60(a), nor has she shown that any of the grounds set forth in Rule 60(b) justifying relief from a court order exist in this case.

To the extent that Plaintiff requests reconsideration of the Court's Order, under the Local Rules of this Court, "[m]otions for reconsideration shall not be

filed as a matter of routine practice[,]" but rather, only when "absolutely necessary." LR 7.2E, NDGa. Absolute necessity exists when there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003); *see also Federal Home Loan Mortg. Corp. v. Matassino*, No. 1:11–CV–3895–CAP, 2012 WL 6622607, at *1 (N.D. Ga. Dec. 3, 2012) ("A motion for reconsideration should only be granted where there is discovery of new evidence, an intervening change in the controlling law, or the need to correct a clear error of law.") (citing *Bryan*, 246 F. Supp. 2d at 1258–59). Plaintiff has not shown that any of those circumstances exist here.

The undersigned notes that in filings subsequent to the Court's Order, Plaintiff contends that equitable tolling should be applied to save her Title VII and ADEA discrimination claims from dismissal. (*See, e.g.*, Doc. 22 at 2-3, 6; Doc. 26 at 2-3). In the March 24th Report and Recommendation, the undersigned found that those claims were barred because Plaintiff did not file them within 90 days of receipt of the EEOC notice of right to sue letter because she stated in her original complaint that she received that letter on October 6, 2016 (*see* Doc. 7 at 4), but she did not file her complaint until January 5, 2017, 91 days later, and therefore those claims were not timely filed. (*See* Doc. 8 at 8-10). The undersigned acknowledged that equitable tolling may be applied to toll the 90-day deadline, but

the application of equitable tolling requires a plaintiff to make a showing of "extraordinary circumstances" to warrant its application. (*Id.* at 10 (citing *Brown v. John Deere Prods.*, 460 Fed. Appx. 908, 909 (11th Cir. 2012)). The undersigned further found that Plaintiff had not alleged any facts to support the equitable tolling of the 90-day period, nor had she responded to Defendant's arguments in its motion to dismiss concerning the untimeliness of her claims. (*Id.*).

Plaintiff did not then make any objection to those findings, but she did assert in her motion for extension of time and request for an attorney (Doc. 14) and in a belated response to Defendant's motion to dismiss (Doc. 15) that her civil action was timely filed because it was received on October 6, 2016. (*See* Doc. 14 at 6). But that assertion does not save her claims because if she received the notice of right to sue on October 6, 2016, her Title VII and ADEA discrimination claims filed January 5, 2017 were untimely as explained in the Report and Recommendation. Plaintiff made no argument in support of equitable tolling in either of those filings, she simply argued that her claims were timely. (*See* Docs. 14, 15). The District Judge then adopted the undersigned's Report and Recommendation and dismissed Plaintiff's Title VII and ADEA discrimination claims as well as her ADA claims.

Plaintiff now asserts that she did not learn of her right to sue until October 14, 2016 when her then-attorney informed her.  (*See, e.g.*, Doc. 26 at 2).  That contradicts her allegation in her complaint and in other filings that she received the notice of right to sue letter on October 6, 2016 (*see* Doc. 7 ¶ 8; Doc. 14 at 6; Doc. 15 at 6) and is further contradicted by the notice of right to sue letter itself which indicates that it was mailed to Plaintiff as well as her attorney on October 4, 2016 (*see* Doc. 7 at 15).  The undersigned finds that this evidence, including Plaintiff's own admissions in her original complaint and other filings that she received the notice of right to sue on October 6, 2016, undermines her current effort to persuade the Court that she did not receive notice until October 14, 2016.  Disturbingly, on March 24, 2017 when Plaintiff first challenged Defendant's arguments about the un-timeliness of her Title VII and ADEA discrimination claims, she asserted—as she had in her original complaint (Doc. 7 ¶ 8)—that she received the notice of right to sue letter on October 6, 2017 (*see* Doc. 14 at 6; Doc. 15 at 6).  Only after her claims were dismissed for being untimely did she assert that she had not actually received the notice until October 14, 2016 (*see* Doc. 22 at 2), which timing further calls into question her candor concerning when she received the notice of right to sue letter.[2]  Thus, the undersigned finds that Plaintiff has failed to provide a basis

---

[2] The undersigned has reviewed the Amended Complaint filed on April 7, 2017 (Doc. 20) and cannot find any assertion that Plaintiff did not receive notice of her right to sue until October 14, 2016.  Nor do the exhibits attached to her Amended

for her request for the Court to review its determination that she received the right to sue letter on October 6, 2016 and her Title VII and ADEA discrimination claims filed 91 days were untimely.[3]

Nor has Plaintiff shown extraordinary circumstances warranting the application of equitable tolling. She cites the fact that her attorney stopped representing her in November 2015, her car was broken into and her laptop was stolen in December 2016, and her mother died in January 2017 (*see* Doc. 26 at 2-3), but those explanations do not address why Plaintiff was unable to file her complaint at any point during the 90-day period from the date of her receipt of the right to sue letter on October 6, 2016 until January 4, 2017, the 90th day. *See, e.g.*, *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1342 (11th Cir. 2017) (finding that the plaintiff had not met her burden of demonstrating that her schizophrenia equitably tolled the limitations period for her Title VII and ADA claims because she did not show that her "medical condition prevented her from filing suit");

---

Complaint support that assertion. (*See* Docs. 20-1 through 20-14). The undersigned notes that Plaintiff attached to her proposed "Second" Amended Complaint a copy of an October 4, 2016 email from an EEOC investigator to Plaintiff's attorney and a copy of an October 14, 2016 email from the attorney to Plaintiff in which he conveyed the investigator's reasons for dismissing her charge (*see* Doc. 28-2 at 95-96), but those emails do not indicate that the EEOC did not send right to sue letters to Plaintiff and her attorney on October 4, 2017.

[3] Plaintiff also suggests that the Court should presume that she received the notice on October 7, 2016 under the three-day mail rule since the EEOC mailed the notice on October 4, 2016 (*see* Doc. 28 at 8-9), but the Court need not make that presumption in light of Plaintiff's own admissions that she received it on October 6, 2016.

*Portis v. World Omni Fin.*, No. 00-0047-CB-M, 2000 U.S. Dist. LEXIS 7667, at *7-14 (S.D. Ala. May 16, 2000) (finding that none of the circumstances cited by the *pro se* plaintiff, including the EEOC's delay in sending the file to her, her efforts to obtain legal representation, and her neck pain following a motor vehicle accident, warranted application of equitable tolling).

Critically, Plaintiff has not explained why she did not make these belated assertions with respect to her alleged October 14, 2016 receipt of her notice of right to sue or her contentions concerning equitable tolling in response to Defendant's motion to dismiss or in objections to the undersigned's Report and Recommendation, prior to the Court ruling on Defendant's motion. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for review of the Court's April 17, 2017 Order (Doc. 33) be **DENIED**.

## V.   Defendant's Motion To Dismiss Amended Complaint (Doc. 19)

Plaintiff filed a complaint on March 24, 2017 (Doc. 11), which Defendant has moved to dismiss for failure to state a claim on which relief can be granted (Doc. 19). In that complaint, Plaintiff alleges that Defendant discriminated against her because of her race, in violation of Title VII (Doc. 11 ¶¶ 1, 13), and because of her age, in violation of the ADEA (*id.*). Plaintiff also asserted that she brings this action under the ADA (*id.* ¶ 1), but she did not check disability as a basis for her discrimination claim or identify her alleged disability (*id.* ¶ 13). She also alleges

14

that Defendant retaliated against her for engaging in statutorily protected activity, but she did not identify under which statute she brings that claim, e.g., Title VII, ADEA, ADA, etc. (*Id.*). Plaintiff offered no factual support for her claims and did not respond to the section of the form employment discrimination complaint requesting her to provide "the essential facts of your claim(s)."  (*Id.* ¶ 14). Plaintiff's March 24, 2017 complaint suffers from the same deficiencies as her original complaint (*compare* Doc. 7 *with* Doc. 11), for the same reasons discussed in the undersigned's March 24, 2017 Report and Recommendation (Doc. 8). Plaintiff filed a subsequent Amended Complaint on April 7, 2017 (Doc. 20), in response to the undersigned's recommendation that Plaintiff be directed to file an amended complaint (*see* Doc. 22 at 2), and the undersigned finds that Plaintiff's Second Amended Complaint filed on April 7, 2017 supersedes her Amended Complaint filed on March 24, 2017.  It is therefore **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's March 24, 2017 complaint (Doc. 19) be **DENIED as moot**.  *See, e.g.*, *Monroe v. City of Forest Park*, No. 1:15-cv-1165-WSD, 2015 U.S. Dist. LEXIS 152504, at *2-3 (N.D. Ga. Nov. 10, 2015) (denying motion to dismiss original complaint as moot because the amended complaint superseded the original complaint); *Williams v. Kemuel*, No. 1:12-cv-1570-JEC, 2013 U.S. Dist. LEXIS 19664, at *5 (N.D. Ga. Feb. 14, 2013) ("[D]efendants' first

motion to dismiss is superceded by the amended complaint and is denied as moot.").

## VI.   <u>Defendant's Motion To Strike Second Amended Complaint (Docs. 23, 24)</u>

Defendant moves to strike Plaintiff's Second Amended Complaint filed April 7, 2017 (Doc. 20) because she did not seek leave of Court or obtain Defendant's consent to file it.  (*See* Doc. 23-1 at 5-6).  While that is true, the undersigned finds that Plaintiff filed the April 7, 2017 Amended Complaint in response to the undersigned's recommendation that she be directed to do so, a recommendation that was ultimately adopted by the District Judge (*see* Doc. 21), albeit after Plaintiff filed the April 7th complaint.  Therefore the undersigned **RECOMMENDS** that Defendant's motion to strike Plaintiff's April 7, 2017 complaint (Docs. 23, 24) be **DENIED**.

That recommendation does not end the inquiry into whether Plaintiff's Second Amended Complaint (Doc. 20) should be allowed to proceed, however. Because Plaintiff was granted leave to proceed *in forma pauperis*, the Court must review her complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) & (ii), which requires the Court to dismiss an *in forma pauperis* complaint at any time if the Court determines that the action is frivolous, malicious, or fails to state a claim on which relief may be granted.  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

FED R. CIV. P. 8(a)(2).   That standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   To state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678-79.   To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

The undersigned also acknowledges that "because Plaintiff [is] acting pro se, [her] 'pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.' " *Shields v. Bank of Am.*, No. 2:11-CV-00267-RWS, 2012 U.S. Dist. LEXIS 30183, at * 3 (N.D. Ga. Mar. 6, 2012) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)).   " 'This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action.' " *Id.* (quoting *Thomas v. Pentagon Fed. Credit Union*, 393 Fed. Appx. 635, 637 (11th Cir. 2010)).

17

As discussed above, the Court has dismissed Plaintiff's ADA claims and her Title VII and ADEA discrimination claims (*see* Docs. 8, 21), and therefore the only claim remaining from Plaintiff's original complaint are her Title VII and ADEA retaliation claims, which Plaintiff was directed to re-plead to add additional factual detail.  Plaintiff's Second Amended Complaint does not comply with the Court's directions.  Instead, Plaintiff simply attached her original complaint to her Amended Complaint.  (*See* Doc. 20 at 3-23).  Plaintiff also attached several exhibits (*see* Docs. 20-1 through Doc. 20-13), but the Court is not required to sift through attachments to a complaint to discern whether a claim exists.  *See, e.g.*, *Osahar v. United States Postal Serv.*, 297 Fed. Appx. 863, 864 (11th Cir. 2008) (unpublished decision) ("Osahar contends that the exhibits to his complaint clarify his arguments, but to force the parties and the court to sift through an additional 100 pages of letters, reports, and contracts would frustrate the purpose of Rule 8(a)(2).  Despite the leniency afforded pro se plaintiffs, the district court does not have license to rewrite a deficient pleading."); *McKissick v. Deal*, No. 5:15-CV-0407-MTT, 2015 U.S. Dist. LEXIS 152955, at *8 (M.D. Ga. Nov. 12, 2015) ("Despite the lenience afforded *pro se* plaintiffs, this Court will not – and is not required to – sift through hundreds of pages of fragmented information to decipher Plaintiff's claims *and* then determine whether any fact buried within his 364 exhibits is material.").

Plaintiff's April 7, 2017 complaint fails to comply with the Court's instructions on how to amend her complaint with respect to her Title VII and ADEA retaliation claims, nor does it provide sufficient facts to plausibly state retaliation claims on which relief can be granted, for the reasons set forth in the undersigned's March 24th Report and Recommendation.   Accordingly, it is **RECOMMENDED** that Plaintiff's Second Amended Complaint filed April 7, 2017 (Doc. 20) be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## VII.   Plaintiff's Motion To File "Second" Amended Complaint (Doc. 28)

Plaintiff moves for leave to file a "Second" Amended Complaint, which would actually be a Third Amended Complaint if allowed, in which she appears to add Defendants International Brotherhood of Teamsters and Joint Council 75, the International Alliance of Theatrical Stage Employees (IATSE), Local 728, and the International Brotherhood of Teamsters (*see* Doc. 28-1 at 1-2), continues to assert Title VII and ADEA discrimination and retaliation claims, and adds a claim for back pay (*see* Doc. 28 at 2).   Defendant objects to allowing the amendment because it fails to state a claim on which relief can be granted.  (Doc. 29).

Rule 15 instructs that when a court considers a motion to amend a pleading, "[t]he court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  "[T]here must be a substantial reason to deny a motion to amend, such as undue delay, bad faith, dilatory motive on the part of the movant, . . . undue

prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Nance v. Ricoh Elecs., Inc.*, 381 Fed. Appx. 919, 924 (11th Cir. 2010) (quotations omitted).  In regards to futility, the denial of leave to amend is justified "when the [amended] complaint is still subject to dismissal." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (internal citations omitted). Because efficiency concerns dictate that courts and opposing parties should not be required to expend resources on hopeless cases, "leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008).

The undersigned finds that leave should not be granted to file Plaintiff's proposed Third Amended Complaint (captioned "Second Amended Complaint") (Doc. 28-1) because it fails to state a claim on which relief can be granted.  In the first place, Plaintiff continues to assert Title VII and ADEA discrimination claims in her "First Cause of Action" (*see* Doc. 28-1 at 11), but those claims have been dismissed and because she has not provided a basis for the Court to reconsider its dismissal of those claims, they remain dismissed.  As to her Title VII and ADEA retaliation claims ("Second Cause of Action"), Plaintiff alleges:

> 30.  Defendants retaliated against Plaintiff by defaming her name and credibility, making false statements against her and removing her name off the referral list resulting in substantial decline in wages. The adverse retaliations were unwarranted and without cause which

included but was not limited to a hostile work environment, job hire refusal intimidating tactics and behavior, fired (layoff) from job productions, discrimination and defamation.

31.   Defendant retaliated against Plaintiff for engaging in activities protected under Title VII and the ADEA, including but not limited to oral complaints opposing and about the unfair practices.  The effects of the unfair practices Plaintiff complained about above has been used to rob the Plaintiff of equal employment opportunities and it adversely affected her employment status.

32.   April 22, 2016 Plaintiff received right to sue from EEOC for retaliation.  As a result of the Plaintiff's written and oral grievance, Union Hall address, discrimination, retaliation charges and oral grievances Plaintiff was continuously denied available work for the remainder of 2016 working a total of 14 days for the year at a lower pay rate . . . .

(Doc. 28-1 ¶¶ 30-32).   Plaintiff has again failed to comply with the Court's direction to "describe[] the specific actions Defendant took against her after she filed her September 28, 2015 EEOC charge and when those actions were taken; identif[y] the person or persons who took those actions; provide[] factual support for her belief that those persons were aware of her EEOC charge; [and] provide[] factual support for her belief that those persons took the challenged action because she filed an EEOC charge."  (*See* Doc. 8 at 19-20).  Moreover, to the extent that she alleges that she engaged in other statutorily protected activity beyond filing the September 2015 EEOC charge, she has failed to identify when she engaged in that activity and to whom she voiced her complaint(s).  For the same reasons discussed in the previous Report and Recommendation, the undersigned finds that Plaintiff

has not alleged sufficient factual support to plausibly show that Defendant retaliated against her because she engaged in statutorily protected under Title VII and the ADEA.

Plaintiff also appears to asserts claims for back pay (Doc. 28-1 ¶¶ 33-36), breach of duty of fair representation (id. ¶¶ 37-47), and hostile work environment claim (*id.* ¶¶ 48-52), but her allegations are confusing and conclusory, and fail to identify the particular defendant against which they are asserted and the factual and legal bases for these claims.   Plaintiff has therefore failed to state claims on which relief can be granted.

Because Plaintiff's proposed "Second" Amended Complaint (Doc. 28-1) fails to state a claim on which relief can be granted, it is **RECOMMENDED** that her motion for leave to file that complaint (Doc. 28) be **DENIED**.

## VIII.  Plaintiff's Motion To File "Third" Amended Complaint (Doc. 35)

Plaintiff moves to file a "Third" Amended Complaint, which would actually be her Fourth Amended Complaint, to assert several "new claims," in addition to all "the charges and allegations from" all of her previous complaints.  (Doc. 35-1 at 1).  She continues to assert Title VII and ADEA discrimination claims (Doc. 35-1 at 4-6), her Title VII and ADEA retaliation claims (*id.* at 6-9), and a claim for breach of duty of fair representation on a grievance (*id.* at 11).  She also asserts the following "new claims": negligent misrepresentation (*id.* at 11-12), "procedural

docket error" (*id.* at 12), wrongful termination (*id.*), hostile work environment pursuant to a "continuing violation theory" (*id.* at 12-13), defamation (*id.* at 13-14), and violation of Title I of the LMRDA, 29 U.S.C. §§ 411-15 (*id.* at 14-15). Defendant argues that the Court should not grant Plaintiff leave to file her proposed "Third" Amended Complaint because it fails to state a claim on which relief can be granted. (Doc. 36).

### A.   Title VII and ADEA Discrimination Claims

As already discussed, the Court has dismissed these claims and the undersigned finds that Plaintiff has not shown why the Court should revisit that decision. Moreover, Plaintiff has failed to allege facts that plausibly show that Defendant took any of the challenged actions against her because of her race or sex in violation of Title VII or because of her age in violation of the ADEA. Plaintiff asserts that the challenged "5 % rule allowed the Union to discriminate against her by 'backdooring' jobs and bypassing her for referrals and hire and it infringes upon the normal practice of referral procedures." (Doc. 35-1 at 5). She also alleges that she "presents evidence that the Union took action against her for [] discriminatory reasons (1) the Union violated their referral rules; (2) the Union breached its own duty of fair representation by letting the breach go unrepaired; and (3) evidence indicates hostility against [Plaintiff] as a protected class." (*Id.* at 6). Those conclusory allegations, devoid of factual enhancement, are insufficient to plausibly

demonstrate that the 5 % rule itself is discriminatory based on race or sex, that the Union used the rule to discriminate against Plaintiff because of her race or sex, or that the Union took some other action against Plaintiff because of her race or sex. Therefore, even if Plaintiff's Title VII and ADEA discrimination claims had not been dismissed, she has failed to state discrimination claims on which relief can be granted. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for leave to amend her complaint to assert Title VII and ADEA claims be **DENIED**.

### B.   Title VII and ADEA Retaliation Claims

Both Title VII and the ADEA make it unlawful for a labor organization to retaliate against a member because she "has opposed any practice" made unlawful by the respective statutes (opposition clause), or because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[/litigation]" under the respective statutes (participation clause). 42 U.S.C. § 2000e-3(a) (Title VII); 29 U.S.C. § 623(d) (ADEA). "To state a claim for retaliation under Title VII, a plaintiff must allege the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse action." *Arafat v. Sch. Bd.*, 549 Fed. Appx. 872, 874 (11th Cir. 2013) (unpublished decision) (citing *Pipkins v. City of*

*Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001)); *see also Weeks*, 291 F.3d at 1311 (setting forth same elements for Title VII and the ADEA).

### 1.   **Statutorily Protected Activity**

Plaintiff continues to allege that she engaged in statutorily protected activity when she filed her EEOC charge on September 28, 2015 in which she alleged that Defendant discriminated against her because of her race, sex, and age in violation of Title VII and the ADEA (Doc. 35-1 at 6; *see also* Doc. 7 at 16), and as explained in the undersigned's Report and Recommendation, that allegation is sufficient to satisfy this element.  (*See* Doc. 8 at 14).  Plaintiff also alleges that she engaged in statutorily protected activity when she addressed Union President Randy Brown and the Union Hall members and challenged the 5% rule, participated in another Union member's NLRB investigation, and filed a charge with the NLRB.  (Doc. 35-1 at 6-7).  The Court need not determine at this stage whether those actions constitute statutorily protected activity in light of Plaintiff's showing that she engaged in statutorily protected activity when she filed an EEOC charge in September 2015.

### 2.   **Adverse Employment Action**

Plaintiff alleges that after she engaged in statutorily protected activity, the Union failed to refer or hire her for jobs and she was given significantly less work. (Doc. 35-1 at 7).  For the same reasons discussed in the previous Report and

Recommendation, the undersigned finds that, taking into account Plaintiff's *pro se* status, she has plausibly alleged that she was subjected to adverse employment action for purposes of her Title VII and ADEA retaliation claims.   Liberally construing her allegations, she has plausibly alleged that her work hours and arguably her pay were reduced after she filed her EEOC charge, which might dissuade a reasonable worker "from making or supporting a charge of discrimination."  *Burgos-Stefanelli v. Sec'y, U.S. Dept. of Homeland Sec.*, 410 Fed. Appx. 243, 246 (11th Cir. 2011) (unpublished decision).  *See, e.g.*, *Ambus v. AutoZoners, LLC*, 71 F. Supp. 3d 1280, 1303 (M.D. Ala. 2014) ("For retaliation purposes, the employment action need not have negatively affected take-home pay. Because it could have in this case, it stands to reason that a reasonable jury could find reduced house to be an adverse employment action in that it could dissuade a reasonable worker from taking a protected action.").

### 3.   <u>Causation</u>

"To demonstrate causation, 'a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.' "  *Bowers v. Bd. of Regents of the Univ. Sys. of Ga.*, 509 Fed. Appx. 906, 911 (11th Cir. 2013) (unpublished decision) (quoting *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)). "Causation may be inferred by a close temporal proximity between the protected

activity and the adverse action." *Id.* (citing *Thomas v. Cooper Light, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)). " 'But mere temporal proximity, without more, must be "very close." ' " *Id.* (quoting *Thomas*, 506 F.3d at 1364). "Courts have construed the causal link element broadly." *Bolden v. S.A.B.E.*, No. 6:15-cv-84, 2016 U.S. Dist. LEXIS 97610, at *7 (S.D. Ga. July 26, 2016). "To survive a motion to dismiss, a plaintiff is only required to allege that the Defendant knew of the protected activity and 'that there was a close temporal proximity between this awareness and the adverse . . . action.' " *Id.* at *7-8 (quoting *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)). "If there is a significant time gap, such as more than three months, between the protected activity and the adverse action, a plaintiff must allege additional facts that demonstrate a causal connection." *Id.* at *8 (citing *Thomas*, 506 F.3d at 1364)). "However, close temporal proximity is only one of several methods of demonstrating a causal connection. Therefore, 'a court cannot simply engage in a rote evaluation of [a] time lag in evaluating the sufficiency of a retaliation claim, but instead must read the complaint holistically and take into account relevant context.' " *Id*. (quoting *El-Saba v. Univ. of S. Ala.*, No. 15-00087-KD-N, 2015 U.S. Dist. LEXIS 137286, at *50-51 (S.D. Ala. Sept. 22, 2015), *adopted by* 2015 U.S. Dist. LEXIS 136773 (S.D. Ala. Oct. 7, 2015)).

In reviewing Plaintiff's original complaint, the undersigned found that Plaintiff had "not alleged facts that plausibly show that Defendant retaliated

against her because she engaged in statutorily protected activity.  She has not identified who took action to prevent her from working, how they prevented her from working, and when they took those actions, nor has she alleged that such persons were employees or agents of Defendant or that they were aware of her statutorily protected activity."   (Doc. 8 at 19).   Thus, the undersigned recommended that Plaintiff be required to amend her complaint in which she:

> describes the specific actions Defendant took against her after she filed her September 28, 2015 EEOC charge and when those actions were taken; identifies the person or persons who took those actions; provides factual support for her belief that those persons were aware of her EEOC charge; provides factual support for her belief that those persons took the challenged action because she filed an EEOC charge.

(*Id.* at 19-20).  Having reviewed Plaintiff's proposed "Third" Amended Complaint (Doc. 35-1) in its entirety and liberally construing her allegations in light of her *pro se* status, the undersigned finds that Plaintiff has sufficiently alleged a causal connection between her EEOC charge and the resulting reduction in work. Plaintiff alleges that "immediately after" she filed her EEOC charge (and other complaints) against the Union she received "significant decreases in work" in 2015, working only 23 days from September to December 2015 and working only 14 days in 2016 in spite of the fact that "there were almost 300 film productions going on in Georgia which would have put [Plaintiff] in high demand for driver positions."  (Doc. 35-1 at 7, 9).  She alleges that "the Union gave her a few days of work here and there but nothing steady like she received prior to her compl[ai]nt

28

and charges" (*Id.* at 7).   She has also identified "Defendant Union member[]s

Coordinators Dennis Carter, Keith Collis and Oranz Walker and Captains Jerry

Loudermilk and Doug Wright" as those involved in the decisions not to refer or

hire her, and she indicates that those Coordinators and Captains provided position

statements to the EEOC "where they intentionally lied about her work ethic, work

performance and driving record.   (*Id.* at 5, 7-8).   She also alleges that Union

Business Agent Tony Lefebvre and President/Business Agent Randall Brown also

knew about her EEOC charge and other alleged statutorily protected activity.   (*Id.*

at 8).

Given her *pro se* status, the undersigned finds that Plaintiff has provided

sufficient factual support to state a retaliation claim under Title VII and the ADEA.

It is therefore **RECOMMENDED** that Plaintiff's motion to amend her Title VII

and ADEA retaliation claims be **GRANTED** and that those claims be allowed to

proceed.

### C.     Breach of Duty Of Fair Representation

 "A labor union has a statutory duty of fair representation 'to serve the

interests of all members without hostility or discrimination toward any, to exercise

its discretion with complete good faith and honesty, and to avoid arbitrary

conduct.' " *Barrington v. Lockheed Martin*, 257 Fed. Appx. 153, 156 (11th Cir.

2007) (unpublished decision) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)).

"If the union representing the employee 'acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation,' and employee may sue both the employer and the union, regardless of the outcome or finality of the grievance or arbitration proceeding." *Id.* (quoting *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164 (1983)).

Plaintiff alleges that Defendant's Business Agent Tony Lefebvre and President/Business Agent Randall Brown "discriminated by failing to represent her on the merits of her grievance because in their positions as President and Business Agents they have a statutory duty to fairly represent her according to any violation of a [collective bargaining agreement]." (Doc. 35-1 at 11). Aside from the wholly conclusory nature of Plaintiff's allegations, this claim is futile because it is barred by the applicable six-month statute of limitations for such claims, as Defendant argues. (*See* Doc. 36 at 8-9). "In the interest of labor relations stability, courts have adopted a short six-month statute of limitations for the filing of DFA [duty of fair representation] claims." *Gilliland v. Air Line Pilots Ass'n, Int'l*, 741 F. Supp. 2d 1334, 1343 (N.D. Ga. 2009) (citing *Coppage v. U.S. Postal Serv.*, 281 F.3d 1200, 1204 (11th Cir. 2002) and *Smallakoff v. Air Line Pilots Ass'n, Int'l*, 825 F. 2d 1544, 1546 (11th Cir. 1997)). "The limitations period begins to run once the plaintiff discovers or should have discovered 'the acts that form the basis of the DFR claim." *Id.*

Here, Plaintiff contends that Union officials failed to represent her on the merits of her grievance, and although she did not allege when that failure occurred, she attached a copy of a letter to her from Business Agent Lefebvre dated September 14, 2015 in which he informed her that he "determined that the grievance has no merit" and explained the basis for that finding.  (*See* Doc. 35-4 at 27).  Thus, Plaintiff was aware of the Union's action on her grievance on or around September 14, 2015, well over a year before she filed this action on January 5, 2017.  Her duty of fair representation claim is therefore barred by the applicable six-month statute of limitations.  *See, e.g.*, *Bommicino v. GM, LLC*, No. 1:10-cv-2400-JEC, 2012 U.S. Dist. LEXIS 40885, at *26-28 (N.D. Ga. Mar. 26, 2012) (finding that duty of fair representation claim was barred by six-month statute of limitations where the union notified the plaintiff of the settlement of his grievance over a year before he filed the complaint); *Williams v. Packaging Corp. of Am.*, No. 7:06-CV-111(HL), 2008 U.S. Dist. LEXIS 41548, at *25 (M.D. Ga. May 22, 2008) ("[T]o the extent that Plaintiff's fair representation claim is based on Local 646's failure to process the December 2004 grievance, Local 646 is entitled to summary judgment because Plaintiff's claim is barred by the six-month statute of limitations applicable to fair representation claims.").

Accordingly, it is **RECOMMENDED** that Plaintiff's motion to amend her complaint to assert a duty of fair representation claim be **DENIED**.

### D. <u>Negligent Misrepresentation</u>

Plaintiff alleges that Defendant's counsel misrepresented to the Court that they were representing her because on the signature line of their motion to dismiss and brief in support, they indicated they were "Attorneys for Plaintiff." (Doc. 35-1 at 11; *see also* Doc. 3 at 2, Doc. 3-1 at 27). Those were merely scrivener's errors; they were clearly filing the motion and advocating on behalf of *Defendant*. (*See* Docs. 3, 3-1). Moreover, Defendant has shown that, as Plaintiff recounts in her proposed amended complaint (*see* Doc. 35-1 at 11), Plaintiff brought the error to counsel's attention on March 15, 2017, and Defendant's counsel clarified that "[t]hat was a typo in the signature line. We are the attorneys for the Defendant, Teamsters Local 728. We filed the motion on behalf of the defendant. We do not represent you in this case." (Doc. 36-1 at 2). Plaintiff has shown no factual or legal basis for her negligent misrepresentation claim, and it is therefore **RECOMMENDED** that Plaintiff's motion to amend her complaint to assert such a claim be **DENIED**.

### E. <u>Procedural Docket Error</u>

Plaintiff alleges that Defendant's motion to dismiss (Doc. 3) was filed before the Court ruled on her application for *in forma pauperis* (Doc. 1) and should have therefore been "rejected by the clerk." (Doc. 35-1 at 12). Plaintiff also cites, without elaboration, "clerical errors regarding Doc. #11[,] #12, #13, #14; and #15."

(*Id.*).   Plaintiff has shown no legal basis for maintaining claims based on Defendant's filing its motion to dismiss before the Court ruled on Plaintiff's application or based on unspecified "clerical errors."   Accordingly, it is **RECOMMENDED** that Plaintiff's motion to amend her complaint to assert a "procedural docket error" claim be **DENIED**.

### F.   <u>Wrongful Termination</u>

Plaintiff alleges that on August 25, 2015 "Captain Loudermilk" fired her from production, in breach of contract of Local 728 Film and Video Industry Referral Rules, Article 4, which provides that "Captains shall not have the authority to hire or fire any workers."   (Doc. 35-1 at 12).   She also alleges that Loudermilk did not have good cause for firing Plaintiff.   (*Id.*).

This claim fails for several reasons.   First, Plaintiff has not alleged facts that Defendant Union was her employer and therefore she has failed to allege that Defendant terminated her, wrongfully or otherwise.   Furthermore, even if she properly alleged that the Union was her employer, state law claims such as claims for wrongful termination, are preempted by section 301 of the Labor Management Relations Act (LMRA) " 'when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.' "   *Shanks v. Potter*, 451 Fed. Appx. 815, 817 (11th Cir. 2011) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).   Plaintiff's

claim for wrongful termination is substantially dependent on the analysis of a labor contract because "in Georgia, wrongful termination is a tortuous act growing out of the breach of the employment contract" and is therefore preempted by § 301. *Bommicino*, 2012 U.S. Dist. LEXIS 40885, at \*17-18 (internal quotation omitted).

"When preemption applies, the Court may either recharacterize the claim as a Section 301 claim, or dismiss the claim as preempted." *Id.* at \*17 (citing *Lueck*, 471 U.S. at 220). The problem for Plaintiff is that even if the Court recharacterizes her wrongful termination claim as a § 301 claim, it fails because it is barred by the applicable six-month statute of limitations. When an employee sues her employer for breach of the collective bargaining agreement and also alleges that the union breached its duty of fair representation, as Plaintiff does in this case, courts characterize the § 301 claim as a "hybrid § 301" claim, to which the six-month statute of limitations period contained in § 10(b) of the National Labor Relations Act applies. *See Shanks*, 451 Fed. Appx. at 817 (explaining that "[w]here an employee sues the employer for breach of the collective bargaining agreement and the union for breach of the union's duty of fair representation, the claims are known as hybrid § 301/fair representation claims" and "[t]here is a six-month statute of limitations for hybrid § 301/fair representation claims"); *Bommicino*, 2012 U.S. Dist. LEXIS 40885, at \*19 (same). Here, Plaintiff alleges that she was terminated on August 25, 2015, well over a year before she filed this action in

34

January 2017.   Accordingly, her § 301 claim based on her alleged wrongful termination is barred by the applicable six-month statute of limitations.

It is therefore **RECOMMENDED** that Plaintiff's motion to amend her complaint to assert a wrongful termination claim be **DENIED**.

### G.   **"Continuing Violation Theory"**

Plaintiff asserts a claim for "continuing violation theory," which the undersigned construes as a claim for hostile work environment based on ongoing acts of discriminatory harassment.  (*See* Doc. 12-13).  She has not shown that she has administratively exhausted Title VII or ADEA claims for discriminatory hostile work environment based on these alleged ongoing acts of harassment.  Nor has she alleged any facts that plausibly show that these actions were taken because of her race, sex, or age.  (*See id.*).  Accordingly, it is **RECOMMENDED** that Plaintiff's motion to amend her complaint to assert a hostile work environment claim under a continuing violation theory be **DENIED**.

### H.   **Defamation**

Georgia law defines libel as "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule."  O.C.G.A. § 51-5-1(a).  "The publication of the libelous matter is essential to recovery."  O.C.G.A. § 51-5-1(b).  "Slander or oral defamation consists in: . . . (3) Making charges

against another in reference to his trade, office, or profession, calculated to injure him therein[.]"  O.C.G.A. § 51-5-4(a)(3); *see also Brown v. Magnolia Manor, Inc.*, No. 4:13-CV-110 (CDL), 2014 U.S. Dist. LEXIS 173812, at *14 (M.D. Ga. Dec. 17, 2014) ("A person commits slander when []he '[makes] charges against another in reference to his trade, office, or profession, calculated to injure him therein.' " (quoting O.C.G.A. § 51-5-4(a)(3))).  "A viable defamation claim under Georgia law consists of (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm."  *Saye v. Deloitte & Touche, LLP*, 670 S.E.2d 818, 821 (Ga. App. 2008).

In support of her defamation claim, Plaintiff alleges that "[t]he Union allowed the 'leak of [her] grievance and EEOC charges in an effort to receive fault-finding against her"; Lefebvre told her that he had to "snoop around" to investigate her complaint of breach of contract; Lefebvre told Plaintiff "she was not liked by Coordinators Dennis Carter, Keith Collis and Oranz Walker and Captains Jerry Loudermilk and Doug Wright because she caused a problem"; and "[t]hese[] Coordinators and Captains maliciously told untruths about [her] and she asked Lefebvre to represent her against the false allegations but he never did."  (Doc. 35-1 at 13-14).  Plaintiff has failed to allege facts that plausibly satisfy the elements of

a defamation claim.  In particular, her conclusory allegations are insufficient to identify the alleged false and defamatory statement(s) concerning her, who made them and when, nor has she alleged that facts that plausibly show that allegedly defamatory statements were unprivileged and communicated to a third party.

Accordingly, it is **RECOMMENDED** that Plaintiff's motion to amend her complaint to assert a defamation claim be **DENIED**.

## I.   Title I of the LMRDA

Title I of the Labor Management Report and Disclosure Act (LMRDA), 29 U.S.C. § 411, sets forth a bill of rights protecting the rights of union members, including equal rights, freedom of speech and assembly, dues, initiation fees, and assessments, protection of the right to sue, and safeguards against improper disciplinary action.  29 U.S.C. § 411(a)(1)-(5).  29 U.S.C. § 412 provides that a union member whose rights under that section have been violated may bring a civil action in district court.  In support of her LMRDA claim, Plaintiff alleges that after she was fired by Loudermilk on August 27, 2015 and she filed a grievance on August 31, 2015, "Lefebvre suggested that she address the Union Hall with her complaints because Randy Brown would be in attendance."  (Doc. 35-1 at 14). When she addressed the Union Hall on September 19, 2015 about her complaints concerning the 5% rule, Brown told her she was in the wrong forum, and when she told him that Lefebvre told her she could do so, Lefebvre "immediately abandoned

her through the side door." (*Id.*).  Plaintiff then makes general assertions about the rights protected by Title I of the LMRDA, but she fails to allege how the actions described above violate those rights.  (*See id.* at 14-15).  Accordingly, she has failed to state a LMRDA claim on which relief can be granted.

It is therefore **RECOMMENDED** that Plaintiff's motion to amend her complaint to assert a claim under Title I of the LMRDA be **DENIED**.

<u>Summary</u>

It is **ORDERED** that Plaintiff's motion for an extension of time and to appoint counsel (Doc. 14), Plaintiff's motion to serve "Atty J. Fagan" (Doc. 27), and Defendant's Motion To Strike Plaintiff's Response Brief To Defendant's Motion To Dismiss Plaintiff's Second Amended Complaint (Doc. 31) are **DENIED**.

It is **RECOMMENDED** that: Plaintiff's Request For Review Of Court Order (Doc. 33) be **DENIED**; Defendant's Motion To Dismiss Amended Complaint (Doc. 19) be **DENIED as moot**; Defendant's Motion To Strike Plaintiff's Second Amended Complaint (Doc. 23) and Corrected Motion To Strike Plaintiff's Second Amended Complaint (Doc. 24) be **DENIED** but that Plaintiff's Second Amended Complaint (Doc. 20) be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted; Plaintiff's Motion For Leave To File "Second" Amended Complaint (Doc. 28) be

**DENIED**; and Plaintiff's Motion For Leave To File "Third" Amended Complaint (Doc. 35) be **GRANTED in part and DENIED in part**.   Specifically, it is **RECOMMENDED** that Plaintiff's motion to amend her Title VII and ADEA retaliation claims against Defendant Truck Drivers and Helpers Local Union No. 728 be **GRANTED** and that those claims be allowed to proceed, but it is further **RECOMMENDED** that her motion to amend her complaint to assert any other claims set forth in her proposed "Third" Amended Complaint (Doc. 35-1) be **DENIED**.

   **IT IS SO ORDERED, REPORTED, and RECOMMENDED** this <u>25th</u> day of <u>October</u>, 2017.

<u>/s/ J. Clay Fuller</u>
J. Clay Fuller
United States Magistrate Judge
